UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK HAMLETT, | Case No. CV 11-03818-JEM |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER PROCEEDINGS |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## PROCEEDINGS

On May 6, 2011, Mark Hamlett ("Plaintiff or Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security Disability Insurance benefits and Supplemental Security Income benefits.  The Commissioner filed an Answer on August 15, 2011.  On November 21, 2011, the parties filed a Joint Stipulation ("JS").  The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge.  After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be reversed and remanded for further proceedings in accordance with this Memorandum Opinion and Order and with law.

**BACKGROUND**

Plaintiff is a 50 year old male who applied for Social Security Disability Insurance benefits and Supplemental Security Income benefits on November 30, 2007, alleging disability beginning June 1, 2001.  (AR 20.)  Plaintiff has not engaged in substantial gainful activity since that date.  (AR 22.)

Plaintiff's claims were denied initially on July 25, 2008, and on reconsideration on February 25, 2009.  (AR 20.)  Plaintiff filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Maxine R. Benmour on April 28, 2010, in Los Angeles, California.  (AR 20, 32-67.)  Claimant appeared and testified at the hearing, and was represented by counsel.  (AR 20.)  Vocational expert ("VE") Heidi Paul, Ph.D., also appeared and testified the hearing.  (AR 20.)  The ALJ issued an unfavorable decision on May 18, 2010.  (AR 20-31.)  The Appeals Council denied review on March 25, 2011.  (AR 1-7.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issue as the only ground for reversal and remand:

1.  Whether the ALJ carried the Administration's burden at step five.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

1    This Court must review the record as a whole and consider adverse as well as

2  supporting evidence.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).  Where

3  evidence is susceptible to more than one rational interpretation, the ALJ's decision must be

4  upheld.  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

5  "However, a reviewing court must consider the entire record as a whole and may not affirm

6  simply by isolating a 'specific quantum of supporting evidence.'"  Robbins, 466 F.3d at 882

7  (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495

8  F.3d 625, 630 (9th Cir. 2007).

9                          **THE SEQUENTIAL EVALUATION**

10   The Social Security Act defines disability as the "inability to engage in any substantial

11  gainful activity by reason of any medically determinable physical or mental impairment which

12  can be expected to result in death or . . . can be expected to last for a continuous period of not

13  less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has

14  established a five-step sequential process to determine whether a claimant is disabled.  20

15  C.F.R. §§ 404.1520, 416.920.

16   The first step is to determine whether the claimant is presently engaging in substantial

17  gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging

18  in substantial gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S.

19  137, 140 (1987).  Second, the ALJ must determine whether the claimant has a severe

20  impairment or combination of impairments.  Parra, 481 F.3d at 746.  An impairment is not

21  severe if it does not significantly limit the claimant's ability to work.  Smolen v. Chater, 80 F.3d

22  1273, 1290 (9th Cir. 1996).  Third, the ALJ must determine whether the impairment is listed, or

23  equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the

24  regulations.  Parra, 481 F.3d at 746.  If the impediment meets or equals one of the listed

25  impairments, the claimant is presumptively disabled.  Bowen v. Yuckert, 482 U.S. at 141.

26  Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past

27  relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  Before making the

28  step four determination, the ALJ first must determine the claimant's residual functional capacity

                                      3

("RFC").[1]  20 C.F.R. § 416.920(e).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.  If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity.  Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits.  Id.

## THE ALJ DECISION

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since June 1, 2001, the alleged onset date.  (AR 22.)

At step two, the ALJ determined that Plaintiff has the following combination of medically determinable severe impairments: degenerative disc disease of the lumbar spine, hypertension, obesity, hearing loss, coronary artery disease, affective disorder diagnosed as depression, and residuals of a stroke.  (AR 23. )

---

[1]  Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  (AR 23.)

The ALJ then found that the Plaintiff had the RFC to perform less than sedentary work with the following limitations:

> Lift and carry twenty pounds occasionally and ten pounds frequently, sit for six hours in an eight-hour workday, and stand or walk for four hours in an eight-hour workday.  The claimant should never climb ladders, ropes, or scaffolding.  He must avoid all exposure to noise and cannot work in a job that requires excellent hearing.  The claimant is limited to one to two-step instruction jobs with no production quotas, and he can tolerate occasional contact with supervisors, co-workers, and the general public.

(AR 26.)

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as an in-home health aide and a material handler.  (AR 29.)  The ALJ, however, did find there were other jobs existing in significant numbers in the national economy that Plaintiff can perform, such as a surveillance systems monitor and a food and beverage order clerk.  (AR 30.)

Consequently, the ALJ concluded that Claimant is not disabled within the meaning of the Social Security Act.  (AR 31.)

## DISCUSSION

The ALJ decision must be reversed.  The VE's testimony that Plaintiff could perform the surveillance systems monitor and food and beverage order clerk jobs conflicts with the job descriptions in the Dictionary of Occupational Titles ("DICOT").  The ALJ never asked the VE for an explanation of the variance and the VE never gave an explanation.  The Commissioner's contention that no conflict actually exists as to the surveillance systems monitor position is unpersuasive.  The ALJ's step five determination is unsupported by substantial evidence.  The

1   ALJ's non-disability determination is not supported by substantial evidence nor free of legal

2   error.

3   **I.   THE ALJ ERRED IN NOT OBTAINING AN EXPLANATION FOR THE VARIANCE BETWEEN THE VE'S TESTIMONY AND DICOT**

4          **A.   Relevant Federal Law**

5          ALJ's routinely rely on DICOT "in evaluating whether the claimant is able to perform

6   other work in the national economy."  Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990)

7   (citations omitted); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).  DICOT raises a presumption

8   as to job classification requirements.  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1998).

9   An ALJ may not rely on a vocational expert's testimony regarding the requirements of a

10  particular job without first inquiring whether the testimony conflicts with DICOT.  Massachi v.

11  Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing SSR 00-4p ("the adjudicator has an

12  affirmative responsibility to ask about any possible conflict between that [vocational expert]

13  evidence and information provided in the [Dictionary of Occupational Titles]")).  In order to

14  accept vocational expert testimony that contradicts DICOT, "the record must contain

15  'persuasive evidence to support the deviation.'"  Pinto, 249 F.3d at 846 (quoting Johnson, 60

16  F.3d at 1435).  The ALJ must obtain a reasonable explanation for the variance and then must

17  decide whether to rely on the VE or DICOT.  See Pinto, 249 F.3d at 847.  Failure to do so,

18  however, can be harmless error where there is no actual conflict or the VE provides sufficient

19  support to justify any conflicts with or variation from DICOT.  Massachi, 486 F.3d at 1154 n.19.

20         **B.   The VE's Testimony Conflicts With DICOT And The ALJ's RFC**

21         There is no question that the VE's testimony conflicts with DICOT and the ALJ's RFC.

22  The VE identified two jobs in the national economy that Plaintiff could perform: surveillance

23  systems monitor, DICOT 379.367-010, 1991 WL 673244, and food and beverage order clerk,

24  DICOT 209.567-014.  According to DICOT, both jobs require a reasoning level of 3, which

25  means:

26

27

28

6

1    Apply commonsense understanding to carry out instructions in written, oral, or

2    diagrammatic form.  Deal with problems involving several concrete variables in or from

3    standardized solutions.

4  Id.; see also DICOT Appendix C, 1991 688702, setting forth General Educational Development

5  ("GED") reasoning levels "required of the worker for satisfactory job performance."  A job's

6  reasoning level "gauges the minimal ability a worker needs to complete the job's tasks

7  themselves."  Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005).

8    The ALJ's RFC limits Plaintiff "to one to two step instructions with no production

9  quotas."  (AR 26.)  A limitation of two steps of instruction corresponds to Level 1 reasoning.

10  Grigsby v. Astrue, 2010 WL 309013, at *2 (C.D. Cal. Jan. 22, 2010) ("The restriction to jobs

11  involving no more than two-step instructions is what distinguishes Level 1 reasoning from

12  Level 2 reasoning."); see also Murphy v. Astrue, 2011 WL 124723, at *6 (C.D. Cal. Jan. 13,

13  2011); Burns v. Astrue, 2010 WL 4795562, at *8 (C.D. Cal. Nov. 18, 2010) (three and four-step

14  instructions inconsistent with Reasoning Level 2 jobs).

15    A simple repetitive tasks limitation has been held consistent with both Reasoning Level

16  1 (one and two-step instructions) and Reasoning Level 2 (three and four-step instructions).

17  Chavez v. Astrue, 2009 WL 5172857, at *7 n.10 (C.D. Cal. Dec. 21, 2009); see also DICOT

18  App. C.  Although the Ninth Circuit has not addressed the issue yet, district courts in this

19  Circuit have held that a limitation to simple, repetitive tasks is inconsistent with Reasoning

20  Level 3 jobs.  Grimes v. Astrue, 2011 WL 164537, at *4 (C.D. Cal. Jan. 18, 2011); Carney v.

21  Astrue, 2010 WL 5060488, at *4 (C.D. Cal. Dec. 6, 2010); Smith v. Astrue, 2011 WL 2749561,

22  at *5 (C.D. Cal. Jul. 13, 2011); Bagshaw v. Astrue, 2010 WL 256544, at *5 (C.D. Cal. Jan. 20,

23  2010); McGensy v. Astrue, 2010 WL 1875810, at *3 (C.D. Cal. May 11, 2010); Tich Pham v.

24  Astrue, 695 F. Supp. 2d 1027, 1032 n.7 (C.D. Cal. 2010); Etter v. Astrue, 2010 WL 4314415,

25  at *3 (C.D. Cal. Oct. 22, 2010); Pak v. Astrue, 2009 WL 2151361, at *7 (C.D. Cal. Jul. 14,

26  2009); Tudino v. Barnhart, 2008 WL 4161443, at *11 (S.D. Cal. Sep. 5, 2008) ("Level two

27  reasoning appears to be the breaking point for those individuals limited to performing only

28

1    simple, repetitive tasks."); Squier v. Astrue, 2008 WL 2537129, at *5 (C.D. Cal. Jun. 24, 2008)

2    (Reasoning Level 3 inconsistent with simple, repetitive work).

3         The VE's testimony that Plaintiff can perform the surveillance systems monitor and food

4    and beverage order clerk jobs, which require Level 3 reasoning, plainly conflict with the ALJ's

5    RFC limitation to one and two-step instructions (Reasoning Level 1).

6         **C.    The ALJ's Error Was Not Harmless**

7         The ALJ did not ask the VE whether her testimony was consistent with DICOT.  (AR 62-

8    66.)  As a result, the VE never gave any explanation or justification for the variance.  Neither

9    did the ALJ.  Nor is there anything within the ALJ decision itself that provides sufficient or any

10   support for the variation from DICOT.

11        The Commissioner implicitly concedes the conflict as to the food and beverage order

12   clerk but argues that there is no actual conflict as to the surveillance systems monitor job and,

13   thus, no harmless error because that job by itself would meet the Commissioner's step five

14   burden.  See Carmickle v. Comm'r. Soc. Sec. Admin., 553 F.3d 1155,1162-63 (9th Cir. 2008).

15   The Commissioner's arguments, however, are not "persuasive evidence to support the

16   deviation."  Pinto, 249 F.3d at 846.

17        The Commissioner argues that the DICOT narrative description for the surveillance

18   systems monitor job offers greater insight regarding the specific functions of the job, citing the

19   10th Circuit decision of Hackett v. Barnhart, 395 F.3d 1168, 1175-76 (10th Cir. 2005).  In that

20   case, which also involved the same surveillance system monitor job, the ALJ's RFC limited the

21   plaintiff to no direct contact with the general public and occasional contact with co-workers.  Id.

22   at 1175.  Although DICOT indicates a "People" rating of 6, the DICOT narrative work

23   description actually indicates that contact with people is limited and the VE testified that, in

24   fact, the job is fairly solitary.  Id. at 1175-76.  Thus, the ALJ found no conflict with DICOT in the

25   VE's testimony.  Id. at 1176.  Applying the logic of Hackett, the Commissioner argues the

26   narrative job description for the surveillance systems monitor involves "very simply tasks

27   (monitoring and controlling surveillance cameras)."  (JS 12.)

28

1    There are several problems with the Commissioner's argument.  First, the

2  Commissioner cannot fill the void left by the failure of the VE and ALJ to explain the variance

3  between the VE's testimony and DICOT.  This Court cannot consider arguments not

4  addressed in the ALJ decision.  Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (court

5  cannot base its ruling on considerations not addressed in the ALJ decision).  In Hackett, the

6  argument made here by the Commissioner was provided by the ALJ and VE.  Id. at 1175-76.

7  Hackett was not a case where the VE and ALJ failed to acknowledge a variance and/or failed

8  to explain that variance.  Indeed, the Commissioner fails to acknowledge that the ALJ decision

9  in Hackett was reversed because the ALJ specified a Reasoning Level 2 limitation that the ALJ

10  and VE failed to explain.[2]  Id. at 1176.

11    Second, the Commissioner's argument fails in any event.  Set forth below is the

12  narrative job description for the surveillance systems monitor:

13    Monitors premises of public transportation terminals to detect crimes or disturbances,

14    using closed circuit television monitors, and notifies authorities by telephone of need for

15    corrective action.  Observes television screens that transmit in sequence views of

16    transportation facility sites. Pushes hold button to maintain surveillance of location

17    where incident is developing, and telephones police or other designated agency to notify

18    authorities of location of disruptive activity.  Adjusts monitor controls when required to

19    improve reception, and notifies repair service of equipment malfunctions.

20  DICOT 379.367-010.  The Court disagrees with the Commissioner's interpretation of this

21  description as very simple and not mentally demanding.  Obviously, there is some judgment in

22  assessing that a potential crime has been committed or is in progress.  The Commissioner,

23  moreover, does not acknowledge that the ALJ's RFC limitation to one to two-step instructions

24  _____

25    [2]  Hackett plainly provides authority that undermines Plaintiff's contention that the RFC
26  limitation to only "occasional contact with supervisors, co-workers and the general public conflicts
   with DICOT."  (AR 26.)  Nonetheless, the argument that according to the DICOT narrative job
27  description, the surveillance systems monitor job involves only limited social interaction is the
   Commissioner's rationale, not that of the ALJ or VE.  This is another issue to be addressed on
28  remand.

9

1  indicates Reasoning Level 1, which is quite far afield from the Reasoning Level 3 specified in

2  DICOT.  The Commissioner's argument is not persuasive evidence that no conflict exists

3  between DICOT and the ALJ's RFC limitation.[3]

4      The ALJ's failure to obtain any explanation for the variance between DICOT and the

5  ALJ's RFC limitation to jobs with only one to two-step instructions is not harmless error.  The

6  ALJ's step five determination is not supported by substantial evidence.  The ALJ's non-

7  disability determination is not supported by substantial evidence nor free of legal error.

8                                          **ORDER**

9      IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is

10  REVERSED AND REMANDED for further proceedings in accordance with this Memorandum

11  Opinion and Order and with law.

12      **LET JUDGMENT BE ENTERED ACCORDINGLY.**

13

14

   DATED: <u>February 14, 2012</u>              <u>      /s/ John E. McDermott      </u>
15                                                    JOHN E. MCDERMOTT
                                              UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20

21

22

23

24  _____

25      [3] Plaintiff also contends that the RFC limitation precluding jobs that require excellent hearing
   (AR 26) also conflicts with the DICOT job description for the surveillance systems monitor job.  Yet
26  Plaintiff fails to identify anything in the DICOT job description that requires excellent hearing.  <u>See</u>
   DICOT 373.367-010.  In this instance, the VE did reject the notion that merely conversing over the
27  telephone is inconsistent with DICOT or the ALJ's RFC: "I think that conversing over the telephone
   doesn't necessarily require excellent hearing."  (AR 64.)  Thus, there is no conflict between DICOT
28  and the ALJ's RFC preclusion of jobs which require excellent hearing.